UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLIN LATTEREAL ROYAL, | ) Case No.: 1:09-cv-01407-BAM (PC) |
| Plaintiff, | ) ORDER GRANTING DEFENDANTS' MOTION |
| v. | ) FOR SUMMARY JUDGMENT |
|  | ) (ECF No. 31) |
| S. KNIGHT, et al., | ) |
| Defendants. | ) |

**I.      Introduction**

Plaintiff Marlin Lattereal Royal ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's first amended complaint, filed on August 19, 2010, against Defendant Knight for excessive force in violation of the Eighth Amendment and retaliation in violation of the First Amendment, and against Defendant Clark for failure to protect in violation of the Eighth Amendment.  (ECF Nos. 15, 36.)  The parties have consented to Magistrate Judge jurisdiction.  (ECF Nos. 5, 34.)

Currently pending before the Court is Defendants' motion for summary judgment filed on October 30, 2012.[1]  (ECF No. 40.)  Plaintiff opposed the motion on February 11, 2013, and

---

[1]     Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 41); see Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

Defendants replied on February 19, 2013. (ECF Nos. 48, 49, 50.) The motion is deemed submitted. Local Rule 230(l).

## II. Legal Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the court is to liberally construe the filings and motions of pro se litigants. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations and citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to scour the record for triable issues of fact. Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection.  This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**A.     Summary of Relevant Allegations in First Amended Complaint**

<u>Allegations against Defendant Knight</u>

Plaintiff alleges that on January 28, 2009, Defendant Knight became verbally and physically abusive.   When his personal property was delivered, Plaintiff informed Defendant Knight that his television was missing.  Defendant Knight told Plaintiff to shut up the fuck up or his property would be taken back.  Plaintiff asked Defendant Knight not to speak to him that way.  Defendant Knight replied, "I told you to shut the fuck up.  Your [sic] an inmate.  I do not have to respect you.  If you say another word you will not get your present property today."  (ECF No. 15, p. 3.)  Plaintiff replied, "I'm not a child.  I'm a man.  Please do not speak to me that way."  Defendant Knight became very loud and screamed, "Fuck this shit. Go back to your cell.  I'm not giving you your property."  (<u>Id.</u>) While Plaintiff complied with the order, Defendant Knight grabbed Plaintiff's right shoulder and screamed, "I told you you're an inmate and I do not respect inmates."  (<u>Id.</u>)  Defendant Knight pushed Plaintiff into the cell frame, instantly causing pain to Plaintiff's shoulder, neck, head and back.  Plaintiff was seen by medical, where it was confirmed that he had a swollen injured shoulder.  Plaintiff was given Naproxen.

On March 25, 2009, Defendant Knight came to Plaintiff's cell and threatened that Plaintiff would be placed in the "hole" (Administrative Segregation) if he refused to withdraw a citizen complaint and a 602 complaint and if he refused to stop his family members from calling Warden Clark and Sergeant Turner.  Plaintiff became worried and sent letters to his family.

On April 1, 2009, Defendant Knight carried out his threat by filing a bogus 115 Rule Serious Violation Report.  While confined in the program office, Defendant Knight bragged to Plaintiff that he

had his television and that Plaintiff would never see it.  Defendant Knight swore that if Plaintiff continued with the complaints, then he would hurt Plaintiff in isolation.

<u>Allegations against Defendant Clark</u>

In February and March 2009, Plaintiff filed a staff assault appeal/complaint/citizen complaint to the Warden, Defendant Clark.  In March 2009, Plaintiff wrote a letter to Defendant Clark notifying him of a staff assault by Defendant Knight.  Plaintiff's mother and family members contacted Defendant Clark by telephone to express their concerns.  Plaintiff's mother was assured that threats and future assaults would stop, but Defendant Knight continued his threats, including isolation and television set denial.

**B.     Statement of Undisputed Material Facts ("UMF")**

<u>Defendant Knight</u>

1.     In January 2009, Defendant Knight was a Search & Escort (S&E) officer in Facility D at California Substance Abuse Treatment Facility ("SATF").  (Knight Dec. ¶ 2.)

2.     Among Defendant Knight's duties as an S&E officer were escorting prisoners to and from their cells to medical, dental, or other appointments, or to new housing locations within SATF; and providing prisoners with their personal property after their return from administrative segregation. (Knight Dec. ¶ 3.)

3.     On January 22, 2009, Plaintiff was moved from a cell in the Administrative Segregation Unit in Facility E to a cell in Facility D.  (Knight Dec. ¶ 4.)

4.     Shortly after Plaintiff's move to Facility D, he asked Defendant Knight about personal property that he had not yet received, and Defendant Knight told Plaintiff that he would see about his property.  (Knight Dec. ¶ 5.)

5.     On or around January 28, 2009, Defendant Knight located three boxes of Plaintiff's personal property in the property office, put the boxes on a hand cart, and brought them to the Facility D office.  (Knight Dec. ¶ 7.)

Although Plaintiff disagrees with the date, he does not provide any admissible evidence to create a genuine dispute or to suggest a different date.  The Court therefore treats this fact as undisputed.

4

6. Once into the Facility D office with the boxes containing Plaintiff's property, Defendant Knight asked the control booth officer to let Plaintiff into the Facility D office. (Knight Dec. ¶ 7.)

7. When a prisoner takes possession of his property, he must sign a property inventory receipt (Form CDCR 1083). (Knight Dec. ¶ 8.)

Plaintiff attempts to dispute this fact by contending that an inmate has the right to refuse to sign the form if his property is not all there or to note discrepancies. (ECF No. 49.) Plaintiff's contention does not raise a genuine dispute regarding the requirement that inmates must sign the form when they take actual possession of their property. The Court therefore treats this fact as undisputed.

8. After looking at the property in the three boxes, Plaintiff told Defendant Knight that a package was missing. (Knight Dec. ¶ 9.)

9. Plaintiff refused to sign the property receipt. (Knight Dec. ¶ 10.)

10. At that time, Defendant Knight had other duties requiring his attention that precluded spending more time with Plaintiff concerning his personal property. (Knight Dec. ¶ 11.)

Plaintiff attempts to deny this fact by asserting that Defendant Knight had no other duties other than his immediate duty as a property officer. (ECF No. 49.) Plaintiff has not provided any credible evidence to support this statement. The Court therefore treats this fact as undisputed.

11. Defendant Knight told Plaintiff that he did not have time then to discuss his property issues and gave him two options: take the property that was in the three boxes and sign the property receipt or take nothing. (Knight Dec. ¶ 12.)

12. Plaintiff did not agree to either option. (Knight Dec. ¶ 12.)

13. Plaintiff became agitated. (Knight Dec. ¶ 14.)

14. Defendant Knight repeatedly ordered him to leave the office without any of his property and lock up. (Knight Dec. ¶ 15.)

15. After refusing several of Defendant Knight's orders to leave the office, Plaintiff finally got up, and Defendant Knight escorted him to his cell. (Knight Dec. ¶ 16.)

Plaintiff attempts to deny this fact by general citation to his declaration. Plaintiff's declaration does not contain any information to dispute this fact. (ECF No. 48, pp. 30-31.)

5

16.     After Plaintiff was locked in his cell, Defendant Knight took the three boxes of his property back to the property office.  (Knight Dec. ¶ 18.)

17.     After Defendant Knight's encounter with Plaintiff on January 28, 2009, Defendant Knight had nothing more to do with Plaintiff's property.  (Knight Dec. ¶ 20.)

Although Plaintiff attempts to dispute this fact by stating that Defendant Knight spitefully held his TV package by citing his 602 complaint, Plaintiff provides no credible evidence to raise a genuine dispute of fact.

18.     On January 29, 2009, Plaintiff submitted a Health Care Service Request, in which he complained that he could not control his breathing as a result of Defendant Knight's pushing him in his cell.  (Defs' Ex. 3.)

19.     On January 31, 2009, Plaintiff saw a nurse concerning pain in his right shoulder and difficulty in controlling his breathing.  (Defs' Ex. 3.)

20.     The nurse observed no wheezing or shortness of breath in Plaintiff, and no bruising or dislocation in his right shoulder.  (Defs' Ex. 3.)

21.     X-rays taken of Plaintiff's right shoulder on February 19, 2009, were negative for acute displaced fracture or dislocation.  (Defs' Ex. 4.)

22.     On March 10, 2009, Plaintiff was notified that the x-ray results were within normal limits and no physician follow up was required.  (Defs' Ex. 5.)

23.     On April 1, 2009, an inmate told Defendant Knight that Plaintiff had shown him an affidavit and threatened him with physical harm if he didn't sign it.  (Knight Dec. ¶ 21.)

Plaintiff's assertion that Defendant Knight lied, without more, is not sufficient to raise a genuine dispute of material fact.

24.     As a result of information provided by the inmate, Defendant Knight issued a Rules Violation Report to Plaintiff, charging him with threatening an inmate, and resulting in Plaintiff's placement in administrative segregation pending an investigation of the charge.  (Knight Dec. ¶ 22.)

25.     On April 3, 2009, after Plaintiff had been placed in administrative segregation, another inmate approached Defendant Knight with information that Plaintiff had pressured the inmate to sign

1  an affidavit falsely stating that the inmate had witnessed an officer assault Plaintiff.  (Knight Dec. ¶
2  23.)
3          Plaintiff admits that another inmate came forward, but denies pressuring the inmate.  Plaintiff's
4  denial of the accusation and citation to the declaration of Inmate Elmore do not provide competent
5  evidence to raise a genuine dispute of fact that an inmate approached Defendant Knight with
6  information.
7          26.     On April 9, 2009, Defendant Knight prepared a confidential memorandum to Captain
8  Cronjager, including statements signed by the two inmates providing the information concerning
9  Plaintiff's attempts to coerce or threaten them into signing false affidavits.  (Knight Dec. ¶ 24.)
10         Although Plaintiff denies that he attempted to coerce or threaten inmates to sign affidavits, this
11  does not raise a genuine dispute of material fact regarding the preparation of the confidential
12  memorandum or the contents of the memorandum.
13         27.     Occasionally, the evidence used to support a disciplinary charge against an inmate is
14  confidential information from a source (typically, another inmate) whose identity, if disclosed, would
15  put into jeopardy the informant's safety and the security of the institution.  (Declaration of Akin
16  ("Akin Dec.") ¶ 3.)
17         28.     When confidential information from an inmate is the basis for the disciplinary charge,
18  the confidential information itself (usually in the form of a memorandum or chrono stating the
19  information, the identity of the confidential source, and the circumstances from which the information
20  was obtained) is not given to the inmate.  (Akin Dec. ¶ 4.)
21         29.     Instead of providing the confidential information to the inmate, the inmate is given a
22  Confidential Information Disclosure (Form CDC 1030) that indicates that (1) receipt of confidential
23  information that has been considered in the disciplinary charge, (2) the reasons that the information is
24  considered reliable, (3) as much of the confidential information that can be disclosed without
25  identifying its source, and (4) the reason why the source of the confidential information cannot be
26  disclosed.  (Akin Dec. ¶ 5.)
27         30.     When a disciplinary charge was based on confidential information, the responsibilities
28  of the hearing officer for the disciplinary charge included assuring that the Confidential Disclosure

form given to the inmate in lieu of the confidential document itself contained sufficient information to apprise the inmate of the nature of the evidence that would be used against him, and that the confidential information met the criteria for reliability set forth in title 15, section 3321 of the California Code of Regulations. (Akin Dec. ¶ 6.)

31. Evidence from confidential informants that did not meet the criteria in section 3321 would not be considered in deciding a disciplinary charge against an inmate. (Akin Dec. ¶ 7.)

32. On May 20, 2009, Lieutenant Akin was the hearing officer for the disciplinary charge against Plaintiff for making threats against an inmate. (Akin Dec. ¶ 8.)

33. The evidence supporting the charge against Plaintiff consisted of only confidential information from two inmates. (Akin Dec. ¶ 9.)

34. Lt. Akin reviewed the information provided by the confidential sources and noted that the Confidential Disclosure forms did not supply Plaintiff with enough information to ensure his due process rights. (Akin Dec. ¶ 10.)

35. In addition, Lt. Akin was not satisfied that the confidential information met the criteria for reliability set forth in section 3321(c). (Akin Dec. ¶ 11.)

36. Because Lt. Akin determined that the Confidential Disclosure forms were deficient and the confidential information did not meet the criteria for reliability, he was unwilling to consider the confidential information in deciding the disciplinary charge against Plaintiff. (Akin Dec. ¶ 12.)

37. Because the disciplinary charge against Plaintiff was based solely on the confidential information, once Lt. Akin discarded that evidence, no evidence remained to support the charge. (Akin Dec. ¶ 13.)

38. Absent any evidence to support the charge against Plaintiff, Lt. Akin found him not guilty, dismissed the charge, and ordered that the Rules Violation Report be removed from his central file. (Akin Dec. ¶ 14.)

39. In rejecting the confidential information in Plaintiff's disciplinary hearing, Lt. Akin made no finding on the veracity of the confidential information; the confidential information may have been true, but it did not comport with regulatory requirements. (Akin Dec. ¶ 15.)

40. None of the information Lt. Akin reviewed for Plaintiff's disciplinary hearing suggested that the confidential information was fabricated or misrepresented by the informants or Defendant Knight, who first obtained and reported the information. (Akin Dec. ¶ 16.)

Defendant Clark

41. In 2009, Defendant Clark was the Warden at SATF in Corcoran, California. (Declaration of Clark ("Clark Dec.") ¶ 2.)

42. Among Defendant Clark's primary responsibilities as SATF's Warden were overseeing the daily operations; assuring the security of the institution and the safety of staff, and preparing the budget. (Clark Dec. ¶ 3.)

43. As SATF's Warden, two Chief Deputy Wardens, each of whom were responsible for different parts of the institution, and an Administrative Assistant, reported directly to Defendant Clark; seven to eight Associate Wardens reported to one or other of the two Chief Deputy Wardens. (Clark Dec. ¶ 4.)

44. As SATF's Warden, Clark did not customarily receive or respond to letters or other written communications from inmates or their family members concerning issues they had with prison conditions or complaints about SATF's staff, even when such communications were addressed to him. (Clark Dec. ¶ 5.)

Plaintiff attempts to dispute this statement by claiming that Defendant Clark was informed by Plaintiff and his mother. (Ex. B to ECF No. 48.) The declaration of Plaintiff's mother states, "Defendant Clark was informed on March 2009 of defendant (S. Knight) assault on my son and harassment, and refusing to give my son (television)." (ECF No. 48, p. 27, ¶ 4.) Defendants object based on lack of personal knowledge. Fed. R. Evid. 602. Defendants' objection is SUSTAINED. This is a conclusory statement lacking foundation and personal knowledge. As such, this statement is not competent evidence sufficient to raise a genuine dispute of fact.

Plaintiff's declaration states that "Defendant Clark (Warden) had knowledge of Knight's threats and harassment prior to Knight excessive force attack." (ECF No. 48, p. 30, ¶ 7.) Defendants' object based on lack of personal knowledge. Fed. R. Evid. 602. Defendants' objection is SUSTAINED. This statement is conclusory and lacks both foundation and personal knowledge.

9

Plaintiff further declares, "Plaintiff's mother has call Defendant Clark in reference to Defendant S. Knight threats and harassment on Plaintiff." (ECF No. 48, p. 31, ¶ 15.) Defendants' again object based on lack of personal knowledge. Fed. R. Evid. 602. Defendants' objection is SUSTAINED. Plaintiff's statement lacks foundation, lacks personal knowledge, provides no information regarding the date of the call or whether Plaintiff's mother spoke to Defendant Clark directly, and is not supported by the declaration of his mother. Plaintiff's declaration does not provide evidence to raise a genuine dispute.

45. When Defendant Clark was SATF's Warden, his Administrative Assistant customarily reviewed each letter or other written communication addressed to him from inmates or their family members and, if she found that a response was appropriate, would forward the writing to the Facility Captain where the concerned inmate was housed with a request that the Captain respond to the inmate or family member who authored the letter or other writing. (Clark Dec. ¶ 6.)

46. Based on Defendant Clark's custom and practice, he would not have personally received, reviewed, or responded to, any letters from Plaintiff or his family members in 2009 or any time that he served as SATF's Warden. (Clark Dec. ¶ 7.)

Plaintiff claims that Defendant Clark was placed on notice and cites pages 4 and 5 of Exhibit A. Page 5 of Exhibit A is a letter to Plaintiff from Stephen Smith, an Administrative Assistant, dated March 10, 2009. Mr. Smith stated that the letter was "written in response to a recent letter, addressed to Warden Clark, which ha[d] been forwarded to [him] for response." (ECF No. 48, p. 21.) This evidence does not raise a genuine dispute regarding Defendant Clark's custom and practice. It also does not demonstrate that Defendant Clark was "on notice" as the letter does not indicate that Defendant Clark received the letter and personally forwarded it to Mr. Smith.

**III.   Discussion**

  **A. Excessive Force**

Plaintiff claims that Defendant Knight used excessive force in violation of the Eighth Amendment when Defendant Knight pushed Plaintiff into a cell frame on January 28, 2009.

The relevant inquiry for this claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian,

1   503 U.S. 1, 6-7, 112 S. Ct. 995, 998 (1992); Whitley v. Albers, 475 U.S. 312, 320, 106 S. Ct. 1078,
2   1085 (1986).  In making this determination, the court may evaluate "the need for the application of
3   force, the relationship between the need and the amount of force that was used, [and] the extent of
4   injury inflicted." Whitley, 475 U.S. at 321, 106 S. Ct. at 1085; Marquez v. Gutierrez, 322 F.3d 689,
5   692 (9th Cir. 2003).

6   However, "not every malevolent touch by a prison guard gives rise to a federal cause of
7   action."  Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178 (2010) (quoting Hudson, 503 U.S.
8   at 9, 112 S. Ct. at 1000).  The Eighth Amendment's prohibition of cruel and unusual punishments
9   "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that
10  the use of force is not of a sort repugnant to the conscience of mankind." Id. at 37-38.  "An inmate
11  who complains of a push or shove that causes no discernible injury almost certainly fails to state a
12  valid excessive force claim." Id. at 38.

13  Here, the parties dispute whether Defendant Knight pushed Plaintiff into the cell frame.
14  However, even if the Court assumes that Defendant Knight pushed Plaintiff into the cell frame, the
15  Court finds that the amount of force was de minimis and does not rise to the level of a constitutional
16  violation.  At best, Defendant Knight pushed Plaintiff a single time, which did not result in bruising or
17  other discernible injury.  (UMF 19-21.)  Plaintiff's assertion that he suffered injury by reference to
18  pain medication and his shoulder popping out of place does not raise a genuine dispute of material
19  fact.  (ECF No. 48, p. 1.)  Plaintiff does not provide medical records supporting his assertions; the
20  available medical records identify only a one-time prescription for Ibuprofen and the absence of any
21  physical injury to Plaintiff's shoulder.  (Defs' Ex. 3.)  Plaintiff also contends that he endured mental
22  pain and suffering as a result of the incident, but Plaintiff's psychiatric records do not support this
23  contention.  Rather, according to the records, Plaintiff's psychiatric complaints stemmed from his
24  purported loss of property.  (Ex. A to ECF No. 48, p. 16.)

25  The Court therefore concludes that the single push by Defendant Knight, which did not result
26  in injury, fails to rise to the level of an Eighth Amendment violation.  See, Wilkins, 559 U.S. at 38,
27  Hudson, 503 U.S. at 9; see also Washington v. Duncan, 2011 WL 2020703, *2 (N.D. Cal. May 2,
28  2011) (inmate pushed a single time against a chain-link fence, resulting only in a scratch or abrasion,

11

did not rise to the level an Eighth Amendment violation). Defendants' motion for summary judgment shall be granted on Plaintiff's Eighth Amendment claim against Defendant Knight.

**B. Retaliation**

Plaintiff claims that Defendant Knight retaliated against him by filing a false Rule Violation Report.

Within the prison context, a viable claim of First Amendment retaliation consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

A plaintiff suing for retaliation under section 1983 must allege that "he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994). The plaintiff does not need to show actual inhibited or suppressed speech, but that there was a chilling effect upon his speech. Rhodes, 408 F.3d at 569. The burden is on the plaintiff to plead and prove the absence of any legitimate correctional goals for the alleged conduct. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Plaintiff has not raised a genuine dispute of material fact sufficient to withstand summary judgment on his claim of retaliation against Defendant Knight. As indicated by Defendants, Plaintiff has established only two of the five elements necessary for his retaliation claim. The undisputed evidence establishes that Defendant Knight took an adverse action against Plaintiff by charging him with a rule violation and Plaintiff engaged in protected conduct by filing a complaint about Defendant Knight's treatment.

However, Plaintiff has not established the required element that the adverse action was taken because of Plaintiff's protected conduct. Although the timing of the incidents can properly be considered as circumstantial evidence of retaliatory intent, see, e.g., Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir.1989), there is no additional evidence to raise a genuine dispute

regarding the motive for the Rule Violation Report.  Plaintiff has not submitted any admissible evidence to raise a genuine dispute of fact regarding Defendant Knight's declaration that he received a report from an inmate that Plaintiff had shown the inmate an affidavit and threatened the inmate with physical injury if he did not sign it and that Defendant Knight submitted the Rules Violation Report for this reason.  (UMF 23-24.)  Plaintiff claims that Defendant Knight lied in the report, but does not provide any evidentiary support.  (ECF No. 48, p. 30, ¶ 6) ("Defendant Knight lied in Rule Violation Report 115 by first claiming threaten his informant's [sic] then changing plaintiff threaten inmates in report (Elmore) and (Robbins) to sign affidavit.")  Plaintiff's declaration is devoid of any statement under penalty of perjury that he did not threaten or pressure any inmates to sign an affidavit.

Plaintiff believes that dismissal of the disciplinary charge supports his claim and defeats summary judgment.  Plaintiff's belief is unsupported.  Although the undisputed evidence reflects that Lt. Akin dismissed the charge because he was not satisfied that the information met the criteria for reliability, Lt. Akin made no finding on the veracity of the confidential information.  (UMF 39.)  Plaintiff has not created a triable issue concerning the motive for the actions of Defendant Knight.

As a final matter, in his opposition, Plaintiff has not disputed the Defendants' position regarding the remaining elements of his retaliation claim.  Specifically, Plaintiff has not disputed that charging an inmate with a rules violation for threatening inmates serves the legitimate prison goal of preventing conflict and violence among prisoners.  Plaintiff also does not argue that his rights were chilled by Defendant Knight's disciplinary charge against him.

For these reasons, Defendants' motion for summary judgment shall be granted on Plaintiff's First Amendment retaliation claim against Defendant Knight.

### C. Failure to Protect Claim

Plaintiff contends that Defendant Clark failed to protect Plaintiff in violation of the Eighth Amendment.  A prison official may be held liable under the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  Id. at 837.

Plaintiff alleges that Defendant Clark failed to protect him from staff misconduct by Defendant Knight after Plaintiff and his mother had communicated with Defendant Clark.  However, the undisputed evidence reflects that Defendant Clark did not personally receive or respond to communications from inmates or their families.  (UMF 44-45.)  Based on his custom and practice, he would not have personally reviewed, or responded to any letters from Plaintiff or his family members.  (UMF 46.)

Plaintiff has not presented any competent evidence to raise a genuine dispute that Defendant Clark received any written or oral communications from Plaintiff or his mother.  Neither Plaintiff nor his mother attests to direct communications with Defendant Clark.  As discussed above, Plaintiff's mother declared that "Defendant Clark was informed on March 2009 of defendant (S. Knight) assault on my son and harassment, and refusing to give my son (television)."  (ECF No. 48, p. 27, ¶ 4.)  Similarly, Plaintiff declared that "Defendant Clark (Warden) had knowledge of Knight's threats and harassment prior to Knight excessive force attack."  (ECF No. 48, p. 30, ¶ 7.)  Plaintiff also declares that "Plaintiff's mother has call Defendant Clark in reference to Defendant S. Knight threats and harassment on Plaintiff."  (ECF No. 48, p. 31, ¶ 15.)  These statements are not based on personal knowledge or corroborated by other evidence.  Instead, they are conclusory assertions and do not raise a genuine dispute of fact sufficient to defeat summary judgment.  Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir.2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment.").

Plaintiff attempts to support his claim that Defendant Clark was on notice by reference to a letter that he received from Stephen Smith.  (ECF No. 48, Ex. A.)  Mr. Smith stated that the letter was "written in response to a recent letter, addressed to Warden Clark, which ha[d] been forwarded to [him] for response."  (ECF No. 48, p. 21.)  At best, this statement in the letter supports Defendant Clark's position that he did not personally respond to letters.  It does not establish that Defendant Clark personally received the letter or that he was on notice of any action by Defendant Knight.

In sum, Plaintiff has failed to raise a triable issue of fact demonstrating that Defendant Clark knew of any risk of harm to Plaintiff from Defendant Knight and failed to protect Plaintiff from such

harm. Accordingly, Defendants' motion for summary judgment shall be granted on Plaintiff's Eighth Amendment claim against Defendant Clark.

### IV.     Conclusion and Order

For the reasons discussed above, IT IS HEREBY ORDERED as follows:

1. Defendants' motion for summary judgment, filed on August 10, 2012, is GRANTED; and
2. The Clerk of the Court is directed to enter summary judgment in favor of Defendants Knight and Clark and close this file.

IT IS SO ORDERED.

Dated:   **December 19, 2013**          /s/ Barbara A. McAuliffe
                                        UNITED STATES MAGISTRATE JUDGE